IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STEVEN JAY PINCUS HUETER, AKA TAO, ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> DEBRA ANNE HAALAND, ET AL., <br><br> Defendants. | CIV. NO. 21-00344 JMS-KJM <br><br> ORDER (1) GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS, ECF NO. 53; AND (2) GRANTING IN PART AMERICAN SAMOA GOVERNMENT DEFENDANTS' MOTION TO DISMISS, ECF NO. 56 |

**ORDER (1) GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS, ECF NO. 53; AND (2) GRANTING IN PARTAMERICAN SAMOA GOVERNMENT DEFENDANTS' MOTION TO DISMISS, ECF NO. 56**

## I. INTRODUCTION

Pro se Plaintiffs Steven Jay Pincus Hueter, Faamuli Pete Faamuli, and Michael "Candyman" Kirk ("Plaintiffs") bring suit against a number of federal government officials ("Federal Defendants"), American Samoa government officials ("ASG Defendants"), and unnamed private fishermen and their affiliates ("Doe Defendants"). Plaintiffs allege violations of the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 et seq.; the Marine Protection, Research, and Sanctuaries Act ("MPRSA"), 33 U.S.C. § 1401 et seq.; the National Marine Sanctuaries Act ("NMSA"), 16 U.S.C. § 1431 et seq; and a variety of territorial environmental statutes, all stemming from alleged

illegal fishing within the Alega Marine and Wildlife Sanctuary and Reserve ("Alega Reserve"), a privately-owned marine protected area.  In addition, Plaintiffs allege that the Federal Defendants are violating Plaintiffs' rights to due process by failing to enforce federal environmental laws against the Doe Defendants, and ask the court to compel the Federal Defendants to initiate enforcement actions.

Before the court are a Motion to Dismiss filed by the Federal Defendants, ECF No. 53, and a Motion to Dismiss filed by the ASG Defendants, ECF No. 56.  For the reasons set forth below, the Federal Defendants' Motion to Dismiss is GRANTED and the Federal Defendants are DISMISSED from the action.  After dismissal of all claims against the Federal Defendants, the only remaining federal claim—and therefore the only basis for this court's subject-matter jurisdiction—is an ESA claim against the Doe Defendants.  This claim cannot proceed unless the Doe Defendants are identified.  And, in the event that there is no remaining basis for federal subject-matter jurisdiction, the court intends to decline supplementary jurisdiction over the territorial law claims asserted against the ASG Defendants.  *See* 28 U.S.C. § 1367(c)(3).  The ASG Defendants' Motion to Dismiss is therefore held in abeyance pending determination of whether the Doe Defendants can be identified and a claim against them may proceed.

///

///

2

///

## II. **BACKGROUND**

Plaintiffs are residents of Alega Village, American Samoa, and are all officers of the Alega Preservation Institute, a 501(c)(3) public charity responsible for stewardship of the Alega Reserve.  *See* ECF No. 46 at PageID ## 381-82.  The Alega Reserve is a privately-owned marine protected area within the waters and foreshore of Alega Village.  *See id.* at PageID # 381. Plaintiff Faamuli Pete Faamuli is also the Sa'O (Chief) of Alega Village.  *Id.*

On October 13, 2021, Plaintiffs filed an Amended Complaint ("Complaint"), ECF No. 46, and a Motion for "Temporary Restraining Order, and for Preliminary Injunction and for Permanent Injunction" ("Motion for TRO"), ECF No. 47.  The Complaint names as Defendants (1) the United States Secretary of the Interior, the United States Secretary of Commerce, the Deputy Director of the United States Fish and Wildlife Service, and the United States Fish and Wildlife Service itself (collectively, the "Federal Defendants"); (2) the American Samoa Department of Marine and Wildlife Resources ("DMWR"), the Director of the DMWR, and several unidentified DMWR employees (the "ASG Defendants"); and (3) 20 unknown commercial fishermen (the "Doe Defendants").  ECF No. 46 at PageID ## 382-84.

All of Plaintiffs' claims arise from commercial fishing activity that allegedly occurred within the Alega Reserve.  In their Complaint, Plaintiffs allege that the Doe Defendants have been conducting commercial fishing within

the waters of the Alega Reserve for "years," including a specific documented occurrence on May 1, 2021. *Id.* at PageID ## 409, 413-14. Plaintiffs allege that this commercial fishing in the Alega Reserve "harms the survivability" of hawksbill and green sea turtles, both of which are listed as endangered under the ESA. *Id.* at PageID # 392. Specifically, Plaintiffs state that fishing of "near threatened" parrotfish species degrades the turtles' reef habitat because parrot fish are "essential to the coral reef, by virtue of their biological functions of cleansing and maintenance of the coral reef, and excretion of sand en masse." *Id.* at PageID # 413. In addition, Plaintiffs assert that illegal fishing harms the turtles "by killing approximately 100 assorted fish and crustation [sic], including female spiny lobsters with eggs, that are part of the omnivore diet of the turtles. Deprivation of food supply harms the survival of the endangered and threatened Green and Hawksbill turtle species." *Id.* at PageID # 414. Finally, Plaintiffs assert that illegal fishing by motorboat in the Alega Reserve causes "collateral damage of continued depositions of oil which appear as an oil slick in the marine sanctuary, and clearly damage the fragile marine environment and ecological systems." ECF No. 59 at PageID ## 743-44.

Plaintiffs allege that this commercial fishing activity violates several federal environmental laws and seek to compel the Federal Defendants to enforce these environmental laws against the Doe Defendants. Specifically, Plaintiffs seek to compel the Secretary of Commerce to enforce violations of the

NMSA and to compel the U.S. Fish and Wildlife Service to enforce the ESA, the MPRSA, and "any other federal law[s] that apply to the present controversy" against the Doe Defendants.  ECF No. 46 at PageID # 425. Plaintiffs move to enjoin the Federal Defendants directly under these federal environmental statutes, pursuant to the Mandamus Act, 28 U.S.C. § 1361, and on the ground that the Federal Defendants are violating Plaintiffs' due process rights by failing to take enforcement actions.  ECF No. 46 at PageID ## 387-88. Finally, they ask the court to compel the Secretary of the Interior to use her "plenary authority over the Government . . . of American Samoa" to coerce the ASG Defendants to undertake enforcement actions.  *Id.* at PageID # 395.

Plaintiffs next allege that the commercial fishing violates various American Samoa statutory provisions and that rather than enforcing these laws against commercial fishermen in Alega, American Samoa Government officials are instead taking bribes in exchange for allowing commercial fishing to go forward within the Reserve.  *Id.* at PageID # 398.  They seek to compel the ASG Defendants to take enforcement actions against the commercial fishermen. *Id.* at PageID # 426.

Finally, Plaintiffs "sue the Defendants John and Jane Doe Commercial Fishermen" directly "to stop them from commercial fishing in Alega Waters and in the waters of the private Alega Marine Protected Area." *Id.*  And Plaintiffs request a "Declaration of Rights or Declaratory Judgment

that Plaintiff Chief Faamuli Pete Faamuli has valid existing rights to land and water in Alega." *Id.* at PageID # 431.

On November 10, 2021, the Federal Defendants filed a "Motion to Dismiss Amended Complaint and Opposition to Motion for Temporary Restraining Order." ECF No. 53.  The Federal Defendants argue that the court lacks subject-matter jurisdiction over Plaintiffs' MPRSA and NMSA claims, and that, in any event, Plaintiffs have failed to state a cognizable claim for relief as to all counts. *See* ECF No. 53-1 at PageID ## 692-703.  On November 12, 2021, the ASG Defendants also filed a Motion to Dismiss the Amended Complaint and Opposition to the Motion for Temporary Restraining Order. ECF No. 55.  The ASG Defendants argue that (1) Plaintiffs lack standing; (2) the court lacks personal jurisdiction over the ASG Defendants; and (3) Plaintiffs have failed to state a claim on which relief can be granted. *Id.* at PageID ## 718-23.  On December 3, 2021, Plaintiffs filed Oppositions to both the Federal Defendants' Motion and the ASG Defendants' Motion.  ECF Nos. 59, 60.  The Federal Defendants filed a Reply on December 10, 2021.  ECF No. 61.  These matters are decided without a hearing pursuant to Local Rule 7.1(c).

### III.  STANDARDS OF REVIEW

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

A federal court's subject-matter jurisdiction may be challenged by motion pursuant to Federal Rule of Civil Procedure 12(b)(1).  "[The] party invoking the federal court's jurisdiction has the burden of proving the actual

existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996) (per curiam).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, Defendants raise a facial attack—they "assert[] that the [Complaint's] allegations . . . are insufficient on their face to invoke federal jurisdiction." *Id.* The court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient to invoke the court's jurisdiction. *See Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). The court will dismiss a party's claim for lack of subject-matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1).

**B.     Motion to Dismiss for Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Cap. Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), as amended (May 11, 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affs.*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet—that the court must accept as true all of the allegations contained in the complaint—"is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that permit the court to infer only "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 679.

## C.    Pro Se Plaintiffs

Because Plaintiffs are proceeding pro se, the court liberally construes their Amended Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure [a] defect, . . . a pro se litigant is entitled to notice of the complaint's

deficiencies and an opportunity to amend prior to dismissal of the action."

*Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); *see also*

*Crowley v. Bannister*, 734 F.3d 967, 977-78 (9th Cir. 2013).  A court may,

however, deny leave to amend where further amendment would be futile.  *See,*

*e.g.*, *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)

(reiterating that a district court may deny leave to amend for, among other

reasons, "repeated failure to cure deficiencies by amendments previously

allowed . . . [and] futility of amendment").

## IV.  <u>ANALYSIS</u>

### A.    **Claims Against the Federal Defendants**

Plaintiffs seek to compel the Federal Defendants to enforce three

federal environmental statutes: the ESA, the NMSA, and the MPRSA.[1]  They

argue that the Federal Defendants can be compelled to take enforcement actions

directly under the statutes and under the Mandamus Act, 28 U.S.C. § 1361.  In

addition, they argue that the Federal Defendants' failure to undertake

---

[1] Liberally construed, Plaintiffs may also be seeking to compel the ASG Defendants to enforce the ESA, NMSA, and MPRSA claims.  But to the extent that Plaintiffs assert such claims against the ASG Defendants, those claims fail.  As set forth in more detail below, the court does not have subject-matter jurisdiction over the NMSA or MPRSA claims. Moreover, the ASG Defendants have neither the duty nor the authority to enforce the NMSA, MPRSA, or ESA.  *See* 16 U.S.C. § 1540(e)(1) (vesting enforcement authority in the Secretary of the Interior and Secretary of Commerce); 16 U.S.C. § 1437(a) (vesting enforcement authority in the Secretary of Commerce); 33 U.S.C. § 1415(f) (vesting enforcement authority in the Secretary of Army and Administrator of the Environmental Protection Agency).  All claims against the ASG Defendants under federal law fail.

enforcement actions violates Plaintiffs' constitutional due process rights.  Each of these arguments fails.

### 1.    *ESA Claim*

Plaintiffs seek to compel the Federal Defendants to enforce the ESA against the Doe Defendants for harming endangered sea turtles within the Alega Reserve.  The Federal Defendants respond that Plaintiffs' ESA claims must be dismissed because federal officers have no mandatory duty under the ESA to take enforcement action against alleged offenders.[2]  The court agrees.

The ESA authorizes private citizens to commence suit on their own behalf under three scenarios:

> (A) to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof; or
>
> (B) to compel the Secretary to apply, pursuant to section 1535(g)(2)(B)(ii) of this title, the prohibitions set forth in or authorized pursuant to section 1533(d) or 1538(a)(1)(B) of this title with respect to the taking

---

[2] The Federal Defendants also allege that Plaintiffs have failed to state a claim because the alleged damage to the habitat of endangered hawksbill and green sea turtles does not constitute a "taking" of those species for the purposes of the ESA.  ECF No. 53-1 at PageID ## 692-93.  But the definition of an impermissible "take" under the ESA includes "significant habitat modification or degradation that actually kills or injures wildlife."  *Babbit v. Sweet Home Chapter of Communities for a Better Oregon*, 515 U.S. 687, 708 (1995). Here, Plaintiffs allege that the damage to the marine environment caused by illegal fishing "harms the survivability of the endangered and threatened species [of] turtles."  ECF No. 46 at PageID # 392.  Whether the alleged commercial fishing actually has the deleterious effect Plaintiffs claim is a question of fact that is not before the court at this motion-to-dismiss stage.

> of any resident endangered species or threatened
> species within any State; or
>
> (C) against the Secretary where there is alleged a
> failure of the Secretary to perform any act or duty
> under section 1533 of this title which is not
> discretionary with the Secretary.

16 U.S.C. § 1540(g)(1).[3]  None of these scenarios applies here.

Section 1540(g)(1)(A) does not afford Plaintiffs a cause of action because Plaintiffs do not allege that the Federal Defendants themselves are "in violation of any provision" of the ESA.  Rather, Plaintiffs allege that "Federal Defendants are in violation of the ESA because they have failed to enforce the intent of ESA's prohibitions."  ECF No. 59 at PageID # 750.  But it is well established that "the term 'violation' [in § 1540(g)(1)(A)] does not include the Secretary's failure to perform his duties as administrator of the ESA."  *Bennett v. Spear*, 520 U.S. 154, 173 (1997).  That is, § 1540(g)(1)(A) "is a means by which private parties may enforce the substantive provisions of the ESA against regulated parties—both private entities and Government agencies—but is not an

---

[3] With respect to land and freshwater aquatic species, the ESA is administered by the United States Fish and Wildlife Service ("FWS"), an agency of the Department of the Interior.  With respect to marine species, the ESA is administered by the National Marine Fisheries Service ("NMFS"), an agency within the Department of Commerce's National Oceanic and Atmospheric Administration.  Because sea turtles live in both marine and terrestrial environments, the agencies have delineated their duties in a memorandum of understanding, which gives NMFS jurisdiction for sea turtles in the marine environment and FWS jurisdiction for sea turtles in the terrestrial environment.  *See* Memorandum of Understanding Defining the Roles of the U.S. Fish and Wildlife Service and the National Marine Fisheries Service in Joint Administration of the Endangered Species Act of 1973 as to Sea Turtles (2015), *available at* https://media.fisheries.noaa.gov/dam-migration/fws-nmfs_mou_2015.pdf (last visited February 15, 2022).  Because Plaintiffs allege harm to turtles in their marine environment, the applicable "Secretary" here is the Secretary of Commerce.

alternative avenue for judicial review of the Secretary's implementation of the statute." *Bennett*, 520 U.S. at 173 (summarizing and endorsing the United States' argument). Section 1540(g)(1)(A) affords Plaintiffs no basis for their ESA claim against the Federal Defendants.

Section 1540(g)(1)(B) is equally unavailing. It provides a "narrow grounds on which an agency's implementation of the ESA can be challenged under the ESA." *Salmon Spawning & Recovery All. v. U.S. Customs & Border Prot.*, 550 F.3d 1121, 1129 n.6 (Fed. Cir. 2008). Specifically, under § 1540(g)(1)(B), citizens may bring suit to compel the Secretary to enforce prohibitions on the taking of endangered species promulgated based on the Secretary's own finding of certain types of emergency situations under § 1535(g)(2)(B)(ii). There is no such finding of an emergency situation here.[4] As such, § 1540(g)(1)(B) is inapplicable.

Likewise, Plaintiffs have no claim under § 1540(g)(1)(C). Section 1540(g)(1)(C) authorizes suits to compel the Secretary "to perform any act or duty under section 1533 of this title which is not discretionary with the

---

[4] Nor does it appear there could be. Section 1540(g)(1)(B) refers to emergency situations as defined in § 1535(g), which the Secretary may determine to have occurred during the "establishment period"—"the period beginning on December 28, 1973, and ending on whichever of the following dates first occurs: (A) the date of the close of the 120-day period following the adjournment of the first regular session of the legislature of such State which commences after December 28, 1973, or (B) the date of the close of the 15-month period following December 28, 1973."

And, to be clear, there is no cause of action under § 1540(g)(1)(A) to compel the Secretary to make an emergency finding under § 1535(g)(2)(B)(ii), because the decision to make such a finding is a discretionary act.

Secretary."  Plaintiffs' allegation that the Secretary has failed to enforce the ESA against violators in Alega falls outside the scope of this provision.  Section 1533 does not relate to enforcement at all.  Instead, it details the Secretary's responsibility to list species and designate critical habitat.  Because there is no non-discretionary duty to take enforcement actions contained in § 1533, § 1540(g)(1)(C) cannot provide a basis for Plaintiffs' claims.

In short, Plaintiffs have not stated a claim against the Federal Defendants under the ESA.  Because any amendment of this claim would be futile, it is DISMISSED without leave to amend.  *See Leadsinger*, 512 F.3d at 532.

### 2.    *NMSA Claim*

Plaintiffs next seek to compel the Secretary of Commerce to enforce the NMSA against the Doe Defendants for damage caused in the Alega Reserve.  The Federal Defendants argue that the court lacks subject-matter jurisdiction over the NMSA claim because the Alega Reserve is not governed by the Act.  Again, the court agrees.

The NMSA vests the Secretary of Commerce with authority to designate National Marine Sanctuaries.  *See* 16 U.S.C. § 1431(c).  Once designated, the Act affords these Sanctuaries certain protections, including making it unlawful for "any person" to "destroy, cause the loss of, or injure any sanctuary resource."  *Id.* § 1436(1).  The Secretary of Commerce is vested with

the power to undertake civil and criminal enforcement activities against actors who engage in prohibited conduct within a National Marine Sanctuary. *See id.* § 1437.

Here, Plaintiffs' claim fails because the Alega Reserve has not been designated a National Marine Sanctuary under the Act. Plaintiffs concede this point in their Opposition, stating that "the private [Alega Reserve] is not a federal national marine sanctuary covered by the statute." ECF No. 59 at PageID # 760. Nevertheless, Plaintiffs ask the court to "exercise its discretion and deem that Plaintiffs succeed to state a claim for relief under the NMSA." *Id.* But the court has no discretion to hear a claim over which it lacks subject-matter jurisdiction. *See, e.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction [over a claim], the court must dismiss [that claim] in its entirety."). Because any amendment of this claim would be futile, it is DISMISSED without leave to amend. *See Leadsinger*, 512 F.3d at 532.[5]

### 3.    *MPRSA Claim*

Plaintiffs also seek to compel the Federal Defendants to enforce provisions of the MPRSA against the Doe Defendants, who Plaintiffs allege

---

[5] For the same reason, any NMSA claim against the Doe Defendants fails. *See Scholastic Ent., Inc. v. Fox Ent. Grp., Inc.*, 336 F.3d 982, 985 (9th Cir. 2003) (courts may dismiss claims sua sponte for lack of jurisdiction); *Cal. Diversified Promotions, Inc. v. Musick*, 505 F.2d 278, 280 (9th Cir.1974) ("It has long been held that a judge can dismiss sua sponte for lack of jurisdiction.").

have violated the Act by discharging oil from their motorboats in the Alega

Reserve.  As the basis for Plaintiffs' claim, they invoke the citizen suit

provision of the MPRSA, which provides that:

> any person may commence a civil suit on his own behalf
> to enjoin any person, including the United States and any
> other governmental instrumentality or agency (to the
> extent permitted by the eleventh amendment to the
> Constitution), who is alleged to be in violation of any
> prohibition, limitation, criterion, or permit established or
> issued by or under this subchapter.

33 U.S.C. § 1415(g)(1).

The Federal Defendants argue that this claim must be dismissed

because Plaintiffs have failed to comply with § 1415(g)'s notice requirement,

which provides that "[n]o action may be commenced . . . prior to sixty days

after notice of the violation has been given to the Administrator or to the

Secretary, and to any alleged violator of the prohibition, limitation, criterion, or

permit."  *Id.* § 1415(g)(2).  For the purposes of the MPRSA, "Administrator"

refers to the Administrator of the Environmental Protection Agency ("EPA")

and "Secretary" refers to the Secretary of the Army.  33 U.S.C. § 1402(a), (h).

The sixty-day notice requirement for citizen suits under

environmental statutes is jurisdictional.  *See, e.g.*, *Hallstrom v. Tillamook Cnty.*,

493 U.S. 20, 26 (1989) ("Under a literal reading of the [Resource Conservation

and Recovery Act], compliance with the 60-day notice provision is a

mandatory, not optional, condition precedent for suit."); *Sw. Ctr. for Biological*

*Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998) ("Th[e] sixty-day notice requirement [under the ESA] is jurisdictional. . . . A failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit."); *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2009) (discussing notice requirements under the Clean Water Act and concluding that "the giving of a 60-day notice is not simply a desideratum; it is a jurisdictional necessity.").

Here, as the Federal Defendants concede, Plaintiffs have satisfied the notice requirements of the ESA and the NMSA by providing a 60-day written notice to the Secretary of the Interior, the U.S. Fish and Wildlife Service, and the Secretary of Commerce. *See* ECF No. 43. But Plaintiffs have not demonstrated that they provided the requisite notice of their MPRSA claims to the Administrator of the EPA or the Secretary of the Army.

Plaintiffs argue that "[d]ue to the procedural history of Plaintiffs' litigations, including refiling the litigation, Plaintiffs have substantially fulfilled significantly greater than the minimum required 60 day written Notice." ECF No. 59 at PageID # 745. This argument is nonsensical. Initiating litigation cannot be sufficient to comply with the obligation to notify relevant agencies at least 60 days *prior to initiating litigation*. Indeed, such an interpretation would completely undermine the purpose of the 60-day notice requirement, which is to enable "[g]overnment agencies to take responsibility for enforcing

environmental regulations, thus obviating the need for citizen suits." *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 650 (9th Cir. 2015) (quoting *Hallstrom*, 493 U.S. at 29). Because Plaintiffs have failed to comply with the MPRSA's 60-day notice requirement, their claim under this statute is DISMISSED. *See Hallstrom*, 493 U.S. at 26 (explaining that because the 60-day notice requirement is jurisdictional, failure to comply requires courts to dismiss rather than stay actions in which the notice requirement has not been satisfied).[6]

Further, even if Plaintiffs satisfied the 60-day notice requirement, and even if Plaintiffs named the correct Defendants (authority to enforce the MPRSA rests with the Administrator of the EPA and Secretary of the Army, neither of whom are party to this suit), Plaintiffs' MPRSA claim against the Federal Defendants would be futile. As with Plaintiffs' ESA claims, the MPRSA's citizen-suit provision cannot be read as authorizing a claim to compel federal officers to carry out enforcement actions. *Cf. Bennett*, 520 U.S. at 173-74 (explaining that a "violation" for the purpose of the citizen-suit provision in the ESA does not include the failure of federal officers to perform their duties under the statute); *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (explaining that statutory enforcement actions are not mandatory duties, but fall within the

---

[6] For the same reasons, any MPRSA claims against the Doe Defendants fails. *See Scholastic Ent.*, 336 F.3d at 985; *Cal. Diversified Promotions*, 505 F.2d at 280.

discretion of the agency responsible for administering the statute).  As a result, the MPRSA claim is DISMISSED without leave to amend.

### 4.   *Mandamus Act*

Plaintiffs alternatively seek to compel the Federal Defendants to enforce the ESA, NMSA, and MPRSA under the Mandamus Act, 28 U.S.C. § 1361.  This argument is meritless.

The Mandamus Act creates a cause of action to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  *Id.*  Mandamus is only available if, among other things, "the official's or agency's 'duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt.'"  *Hueter v. Kruse*, __ F. Supp. 3d __, 2021 WL 5989105, at *25 n.34 (D. Haw. Dec. 17, 2021) (quoting *Plaskett v. Wormuth*, 18 F.4th 1072, 1081 (9th Cir. 2021)).  But it is well-established that an agency's decisions regarding enforcement actions are discretionary.  *See Heckler*, 470 U.S. at 831 ("[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." (collecting cases)); *City & Cnty. of San Francisco v. U.S. Dep't of Transp.*, 796 F.3d 993, 1002 (9th Cir. 2015) ("[A]n agency's decision not to enforce is analogous to prosecutorial discretion, an arena in which courts have traditionally not interfered."); *see also Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 760 (9th Cir. 2021).  Plaintiffs' claim under the Mandamus Act fails.

### 5.   *Due Process*

Plaintiffs next allege that the Federal Defendants have violated their due process rights[7] by failing to enforce the ESA, NMSA, and MPRSA.[8] Plaintiffs' due process claim fails.  Any due process claim requires Plaintiffs to establish, at minimum, a deprivation of a constitutionally protected interest. *See, e.g.*, *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 969-70 (9th Cir. 2010) (explaining that procedural due process protects liberty and property interests, and that substantive due process protects against unreasonable government interference with "certain fundamental rights and liberty interests" (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997))); *Armstrong v. Reynolds*, 22 F.4th 1058, 2022 WL 121873, at *16-17 (9th Cir. 2022).  Here, Plaintiffs have not identified any liberty, property, or fundamental constitutional interest of which they have been deprived.  Nor could they.  "[A]n agency's refusal to enforce does not implicate personal liberty or property rights."  *City & Cnty. of San Francisco*, 796 F.3d at 1002 (citing *Heckler*, 470 U.S. at 832); *see also DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 196 (1989) ("[T]he Due Process Clauses

---

[7] As an unincorporated, unorganized territory, the U.S. Constitution has limited applicability in American Samoa.  *See Hueter*, 2021 WL 5989105, at *2-3 (summarizing American Samoa's unique status).  Due process, however, is one of the "fundamental" Constitutional rights that applies in the territory.  *See Balzac v. Porto Rico*, 258 U.S. 298, 312-13 (1922).

[8] Plaintiffs also allege that the Federal Defendants are violating their rights to due process by failing to enforce local laws that regulate fishing.  But this argument fails—federal agencies have no authority to administer local statutes.

generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.").  Plaintiffs' due process claim fails.

### 6.    *Plenary Authority of the Secretary of the Interior*

Finally, Plaintiffs seek to compel the Secretary of the Interior to use her plenary authority over the government of American Samoa to compel the ASG Defendants to take enforcement actions against the Doe Defendants. This claim also fails.

Although the Secretary of the Interior has plenary authority over American Samoa, she cannot be compelled to exercise that authority unless she has a ministerial duty to do so.  *King v. Morton*, 520 F.2d 1140, 1146 (D.C. Cir. 1975).  Thus, for example, the Secretary may be compelled to invalidate unconstitutional laws in American Samoa (to the extent the United States Constitution applies in American Samoa).  *See King v. Morton*, 520 F. 2d 1140, 1144 (D.D.C. 1975) (explaining that courts are "competent to judge the Secretary's administration of the government of American Samoa by constitutional standards and, if necessary, to order the Secretary to take appropriate measures to correct any constitutional deficiencies").  But the Secretary does not likewise have a mandatory duty to intervene in an American Samoan agency's decision regarding whether or not to take statutory

enforcement actions—decision-making which is itself discretionary.  Indeed, a decision to intervene in the administrative system of American Samoa "'cannot be taken lightly,' as any intervention might jeopardize the United States policy of 'fostering greater self-government and self-sufficiency without disturbing the traditional Samoan cultural values.'"  *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Hodel*, 830 F.2d 374, 378 (D.C. Cir. 1987).  Plaintiffs claim against the Secretary of the Interior fails.[9]

## B.      Claims Against the ASG Defendants

Plaintiffs allege claims that the ASG Defendants are "failing to prevent illegal commercial fishing" in the Alega Reserve under territorial environmental law.  ECF No. 46 at PageID # 397.  Additionally, Plaintiffs allege that the ASG Defendants have taken bribes of illegally caught fish in return for not enforcing American Samoan fishing laws against the Doe Defendants.[10]  The ASG Defendants move to dismiss on the grounds that

---

[9] Plaintiffs also seek to compel the Secretary of the Interior to use her plenary authority to appoint "unbiased" judicial officials to the High Court of American Samoa.  The court has already rejected this precise claim in a different case previously brought by Plaintiffs.  *See Hueter*, 2021 WL 5989105, at *26 n.35.  And the court has already rejected an attempt by Plaintiffs to relitigate this claim in yet another action filed by Plaintiffs as impermissible claim-splitting.  *See Hueter v. Kruse*, 2021 WL 5238763, at *7 n.12, *8 (D. Haw. Nov. 10, 2021).  As Plaintiffs themselves acknowledge, in asserting this claim for a third time here, they are shamelessly attempting—once again—to relitigate this settled issue.  *See* ECF No. 59 at PageID # 769 ("Plaintiffs are appealing this Court's recently held decision in another case filed by Plaintiffs. . . .").  But once again, this constitutes impermissible claim-splitting.  The claim is DISMISSED.

[10] Plaintiffs additionally allege that the ASG Defendants were accepting bribes of fish in violation of the NMSA, 16 U.S.C. § 1436(3)(B).  *See* ECF No. 46 at PageID # 398.  That statute prohibits individuals from offering bribes to federal enforcement officers implementing the NMSA.  *See* 16 U.S.C. § 1436(3)(B) (prohibiting the "bribing" of "any

(1) Plaintiffs lack standing; (2) this court lacks personal jurisdiction over them; and (3) Plaintiffs have failed to state a cognizable claim against them.  *See* ECF No. 55 at PageID ## 718-23.

The court addresses the standing question as it goes to the court's Article III jurisdiction—an issue that needs to be resolved at the outset.  *See Steel Co.*, 523 U.S. at 96-97.  But because the only remaining federal claim in this case—and therefore the only basis for federal subject-matter jurisdiction— is the ESA claim against the Doe Defendants, the court holds consideration of the ASG Defendants' additional arguments in abeyance, pending determination of whether Plaintiffs' ESA claim against the Doe Defendants may proceed.

### 1.    *Standing*

The ASG Defendants argument that Plaintiffs lack standing is without merit.  The doctrine of standing "restricts 'the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.'"  *Dutta v. State Farm Ins. Co.*, 895 F.3d 1166, 1172 (9th Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  "A plaintiff may not bring a generalized grievance, but rather must 'show a personal stake in the outcome of the controversy.'"  *Id.* (quoting *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018)).  To satisfy Article III's standing requirements, a plaintiff must

---

person authorized by the Secretary to implement [the NMSA]").  This claim fails because (1) the Alega Reserve is not protected by the NMSA; (2) the ASG Defendants are not federal officers; and (3) the Act appears to prohibit the act of offering a bribe, not of receiving one.

show that (1) it has "suffered an 'injury in fact'"; (2) "the injury is fairly

traceable to the challenged action of the defendant"; and (3) "it is likely, as

opposed to merely speculative, that the injury will be redressed by a favorable

decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528

U.S. 167, 180-81 (2000).  When undertaking a standing analysis, courts address

the jurisdictional question (i.e., "does the court have power under Article III to

hear the case?") but do not address the merits question (i.e., "did the defendant

violate the law?").  *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141,

1151 (9th Cir. 2000).  "One does not lose standing to sue just because his claims

may fail on the merits."  *Inland Empire Waterkeeper v. Corona Clay Co.*, 17

F.4th 825, 834 (9th Cir. 2021).

Plaintiffs have clearly established standing.  As to the injury-in-fact

prong, Plaintiffs must show that the injury is "(a) concrete and particularized,

and (b) actual or imminent, not conjectural or hypothetical."  *Carrico v. City &*

*Cnty. of San Francisco*, 656 F.3d 1002, 1005 (9th Cir. 2011).  To be "concrete"

the injury must be "real" and "not abstract."  *Dutta*, 895 F.3d at 1173.  And to

be "particularized," "the injury must affect the plaintiff in a personal and

individual way."  *Id.*

Plaintiffs allege that, as a result of the ASG Defendants' failure to

enforce environmental laws, illegal commercial fishing is occurring within

Plaintiffs' privately-owned marine reserve, causing deleterious effects to the

23

environment, species, and water quality.  This is obviously a "real" injury.  It is

equally obvious that the alleged injury is "particularized"—the harm is

occurring within Plaintiffs' privately-owned property.  The alleged

environmental degradation of Plaintiffs' property clears the threshold for

demonstrating an injury-in-fact.  *See, e.g.*, *Cantrell v. City of Long Beach*, 241

F.3d 674, 680 (9th Cir. 2001) (harm to interest in viewing birds sufficient to

establish injury in fact); *Friends of the Earth*, 528 U.S. at 183 (decreased

recreational value of a public river used by plaintiffs sufficient to confer

standing).

Next, Plaintiffs have shown that the alleged injury is fairly

traceable to the challenged action.  This requirement can be satisfied "even if

there are multiple links in the [causal] chain, . . . as long as the chain is not

hypothetical or tenuous."  *Juliana v. United States*, 947 F.3d 1159, 1169 (9th

Cir. 2020).  Thus, in *Juliana*, the federal government's systemic failure to

adequately regulate fossil fuel production and consumption was found to be

fairly traceable to the plaintiffs' climate-change-related injuries.  Likewise,

here, the ASG Defendants' alleged failure to adequately regulate commercial

fishing in the Alega Reserve is fairly traceable to alleged harms stemming from

unregulated commercial fishing there.

Finally, Plaintiffs have shown that the injury is likely to be

redressed by a favorable court decision.  To establish this factor, Plaintiffs need

only show that "there would be a change in a legal status as a consequence of a favorable decision and that a practical consequence of that change would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Novak v. United States*, 795 F.3d 1012, 1019-20 (9th Cir. 2015) (internal quotations and citations omitted). Here, Plaintiffs seek monetary damages and injunctive relief against the ASG Defendants.  Plaintiffs' request for damages satisfies the redressability requirement for standing. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (explaining that both nominal and compensatory damages can independently satisfy the redressability requirement for standing); *see also Steel Co.*, 523 U.S. at 127 (Stevens, J., concurring) ("When one private party is injured by another, the injury can be redressed in at least two ways: by awarding compensatory damages or by imposing a sanction on the wrongdoer that will minimize the risk that the harm-causing conduct will be repeated.").  In addition, an injunction compelling the ASG Defendants to enforce environmental statutes against commercial fishermen in the Alega Reserve would plainly reduce the harm of alleged illegal fishing there.  Plaintiffs have adequately pled each of the elements of Article III standing.  The ASG Defendants' argument that Plaintiffs lack standing fails.

## 2.    *Federal Subject-Matter Jurisdiction*

The ASG Defendants next argue that the court lacks personal jurisdiction over them and that Plaintiffs have failed to state a claim under territorial law.  The court declines to address these questions until it is satisfied that it has federal subject-matter jurisdiction.

As there is no diversity of citizenship between the parties, jurisdiction in this case is premised solely on claims arising under federal law. *See* 28 U.S.C. § 1331.  The only remaining federal claim in this case is the ESA claim against the Doe Defendants.[11]  But in order for this claim to proceed, the identity of the Doe Defendants must be determined.  In such circumstances, a plaintiff may be afforded early discovery to "identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds."  *Gillespie v. Civiletti*, 629

---

[11] Plaintiffs additionally seek a declaration that "Plaintiff Chief Faamuli Pete Faamuli has valid existing rights to land and water in Alega," ECF No. 46 at PageID # 431, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a).  But, as the court has previously determined, *see Hueter*, 2021 WL 5989105, at *18, the court must decline jurisdiction over this issue under the *Younger* abstention doctrine. *See N Grp. LLC v. Hawaii Cnty. Liquor Comm'n*, 681 F. Supp. 2d 1209, 1236 (D. Haw. 2009) (explaining that district courts "may raise the issue of *Younger* abstention sua sponte").  The *Younger* doctrine requires courts to abstain where a state or territorial proceeding is "(1) 'ongoing,' (2) 'implicate[s] important state interests,' and (3) provide[s] 'an adequate opportunity . . . to raise constitutional challenges.'"  *Hueter*, 2021 WL 5989105, at *17 (quoting *Herrera v. City of Palmdale*, 918 F.3d 1037, 1044 (9th Cir. 2019)).  Here, *Younger* requires abstention because (1) the exact question raised in Plaintiffs' request for declaratory relief is implicated in ongoing civil litigation before the American Samoa High Court Land and Titles Division; (2) land rights are of paramount interest in American Samoa and a federal court ruling would disrupt the complex legislative, executive, and judicial framework to determine such rights in American Samoa; and (3) there are no constitutional challenges implicated in this request for declaratory relief.  *Id.* at *17-19 (providing a detailed analysis as to why *Younger* abstention is required with respect to this precise claim).  Thus, Plaintiffs' claim for declaratory relief is DISMISSED.

F.2d 637, 642 (9th Cir. 1980).  District courts apply a multi-factor test in deciding whether to permit early discovery to identify doe defendants.  *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, 2018 WL 1427002, at *2 (S.D. Cal. Mar. 22, 2018) (citing *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999)).  This test considers whether the plaintiff: "(1) identifies the Doe defendant with sufficient specificity that the court can determine the defendant is a real person who can be sued in federal court; (2) recounts the steps taken to locate and identify the defendant; (3) demonstrates the action can withstand a motion to dismiss; and (4) proves the discovery is likely to lead to identifying information that will permit service of process."  *Raiser v. City of Murrieta*, 2021 WL 5264251, at *3 (C.D. Cal. Mar. 18, 2021).

Accordingly, by March 2, 2022, Plaintiffs are required to file with the court *one* of the following: (1) a brief that addresses each of the *Raiser* factors, after which the court will evaluate and determine whether early discovery is appropriate;[12] (2) a notice that Plaintiffs are no longer proceeding against any Doe Defendants; *or* (3) a motion that seeks to substitute named defendant(s) for Doe Defendant(s) pursuant to Federal Rule of Civil Procedure 15.[13]

---

[12]  To be clear, as part of this briefing, Plaintiffs must address how specific discovery is likely to reveal the names of the Doe Defendants.

[13]  Motions to substitute a named defendant for a doe defendant are governed by Rule 15.  *See Cobbler Nevada, LLC* v. *Doe-24.7.40.252*, 2016 WL 10679456, at *2 (N.D. Cal. July 7, 2016).

If the Doe Defendants are identified and a claim against them proves cognizable, the court will turn to the territorial law claims against the ASG Defendants.  But if there is no claim against the Doe Defendants, then the court intends to exercise its discretion to decline supplemental jurisdiction over any remaining territorial law claims.  *See* 28 U.S.C. § 1367(c)(3).

## V.  **CONCLUSION**

The Federal Defendants' Motion to Dismiss is GRANTED in its entirety.  The Federal Defendants are DISMISSED from this case without leave to amend.  To the extent Plaintiffs assert federal law claims against the ASG Defendants, those claims are DISMISSED without leave to amend.  Otherwise, the ASG Defendants' Motion to Dismiss is HELD in abeyance pending determination of whether there is a cognizable federal claim against the Doe Defendants.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 16, 2022.



     /s/ J. Michael Seabright
     J. Michael Seabright
     Chief United States District Judge

*Hueter, et al. v. Haaland, et al.*, Civ. No. 21-00344 JMS-KJM, Order (1) Granting Federal Defendants' Motion to Dismiss, ECF No. 53; and (2) Granting in Part American Samoa Government Defendants' Motion to Dismiss, ECF No. 56